Jones, C. J.,
delivered the opinion of the court.
This is an action of covenant on a charter-party of affreightment of the brig Fancy, Miner, master, for a voyage from New-York to Angostura and back, to recover of the defendants, as the charterers, the stipulated freight, and further demands for demur-rage and passage money.
.The defendant ci^ved oyer, and then pleaded non estfactum, and payment of the stipulated freight money. The evidence in support of the latter plea does not appear in the case, yet'it must have been proved or admitted, for the verdict of the jury is for $63 only, which could not be for the freight of the vessel. The defendant avers, in pleading, that the freight has been paid; the verdict of the jury is in accordance with that averment, and as the plaintiff does not complain of the finding of the jury on that ground, I must assume the fact to be so. It is only important, however, in its bearing upon the merits of the defence under the other issue, by which the defendants deny the execution of the charter-party by them ; and this opens the great question between the parties. It appears that Gram, the plaintiff, who was the owner of the vessel, let her to freight, for the voyage in question, to the defendants, who were co-partners in a house of trade, under the firm of Seton & Bunker, established at Angostura, Seton acting as agent of the firm, at a stipulated freight, with certain reservations; and under an agreement for demurrage, in case of delay, in lading and discharging at the outward and homeward ports, beyond the times agreed upon and allowed for that purpose. The defendants had the use of the vessel for the voyage. She was loaded by Seton at New-York, with a cargo consigned to Bunker at Angostura, which was received by him there, and a return cargo put on board of her by him, with which she returned to New-York. But the charter-party, which turns out to be an informal instrument, under seal, more resembling a memorandum or note of an agreement, afterwards to be reduced to form, than a deed of charter-party, is signed on the part of the defendants by Seton, with the co-partnership-name of “ Seton & Bunkerand it appears that Bunker, the other partner, who resides at Angostura, and conducts the business of the house at that place, was not present *268 at the time. On this supposed defect in the execution of the deed, the defence hinges. And the charterers, after having had the whole benefit of the charter, and after having acted upon the contract, with full knowledge by both parties of its form and con- . . . tents, and after Ml payment of the freight in conformity to its tenor, to repel a further claim to an unimportant amount, avail themselves of the technical objection of the^want of authority in Seton to bind his co-partner by seal to avoid the demand. The judge, who tried the issue, ruled, that the jury might infer a general authority in Seton to execute for Bunker from the co-partnership, and the subsequent acts and assent of Bunker; and that a special authority to execute this charter-party need not be shown; but that if they believed from the circumstance, that Bunker had given Seton general powers to execute for him all instruments which, according to the usage of their business, were necessary to be executed under seal, it would be sufficient to establish this charter-party against Bunker, and he so charged the jury. Under this charge, the jury found a verdict for the plaintiff. The defendants excepted, and now move for a new trial on the ground, 1st. That no proof was given of the execution of the charter-party by Bunker; and 2d. That the judge misdirected the jury.
The principle, that a partner cannot, by virtue of the authority lie derives from the relation of co-partnership, bind his co-partner by deed, has been too long" settled to be now shaken. It is the technical rule of the common law applicable to deeds, which has been engrafted into the commercial system of the law of partnership ; and unless the charter-party in question can, under the circumstances of this case, be construed to be the deed of' Bunker, the defence must prevail. The reasons for the restrictions are not very satisfactory : for all the mischiefs, which the expositors of the rule ascribe to the authority of members of a co-partnership to seal for their co-partners, may flow almost as extensively, and nearly with equal facility, from the use of ..he name and signature of the co-partnership. The dangers of allowing the use of a seal to the members of a co-partnership, are supposed to consist in these two attributes of the seal: that it imports a consideration, and that it is competent to convey absolutely, or *269 to charge and encumber real estate. But negotiable paper, by which the partner may bind the firm, equally imports a consideration with a seal; and upon general principles, the use of the seal of the co-partner, equally with the signature of the co-partnership, would, if permitted, be restricted to co-partnership purposes and co-partnership operations solely; and the joint deed of the co-partners executed by the present for the absent members, be held competent to convey or to encumber the copartnership property alone, and to have no operation upon the private funds or separate estate of the co-partners. With these restrictions upon the use and operation of the seal, is not the power of a partner to bind his co-partner, and to charge and encumber his estate, as great and as mischievous, without the authority to use the seal of the absent partner, as it would be with that authority ? Those powers undeniably place the fortune of the members of a general co-partnership, to a great degree, at the disposal of any one of the co-partners ; but it is necessary to the beneficial management of the joint concern, that extensive powers should be vested in the members who compose it; and when the copartners live remotely from each other, their joint business concerns cannot be advantageously conducted or carried on without a latitude of authority in each, which is inconsistent with the perfect safety of the other co-partners. It cripples the operations of a partner, whose distant residence precludes a personal co-operation, to deny him the use of the seal of his co-partner for instruments requiring it, and which the exigencies of their joint concerns render expedient or beneficial to them. He must be clothed with the power to execute deeds for his co-partner when necessarily required, for the purposes of the trade ; and if that authority is not inherent in the co-partnership, it must be conferred by letter of attorney, and it must be general, or it will be inadequate to the ends of its creation. A co-partnership, especially, which is employed in foreign trade, and has occasion to employ ships for the transportation of merchandise, or to borrow money on respondentia, if its members are dispersed, as is often the case, must be seriously embarrassed in its operations by the application of the rule that requires every co-partner, who is to be bound by the charter-party or the respon *270 dentia bond, to seal it personally, or by attorney duly constituted for that specific purpose, with his own seal. Similar difficulties would arise out of the same rule, when the operations of the house required the co-partnership to execute other deeds. Can it then be, that this stern rule of the common law, which has its appropriate sphere of action, and a most salutary operation on those relations of society where men, not otherwise connected, are the owners of undivided property, is to be applied in all its force, and to govern, with unbending severity, in the concerns of co-partners, whose intimate connection and mutual interest require such large power and ample confidence in the integrity and prudence of each other, to give to their operations efficiency, vigour, and success ?
The pressure of these considerations has induced a relaxation of the common-law-rule, to adapt it to the exigencies of commercial co-partnerships, and other associations of individuals, operating with joint funds for the common benefit. The rule itself remains; but the restrictions, it imposes are qualified by the application of other principles. The general authority of a partner, for example, derived from his relation to his co-partners does not empower him to seal an instrument for them so as to make it binding upon them without their assent, and against their will. This is the fair import of the modern cases, and is, I apprehend, the principle courts are disposed to apply to the use of a seal in joint contracts for co-partnership purposes. An absent partner is not bound by a deed executed for him by his co-partner without his previous authority or permission, or his subsequent assent and adoption. But the previous authority or permission of one partner to another to seal for him, or his subsequent adoption of the seal as his own, will impart efficacy to the instrument as his deed; and that previous authority or subsequent adoption may be by parol. These are the results which I deduce from the judicial decisions, especially those of our own courts on the subject; and if I am correct in my deduction, the conclusion must be favourable to the validity of this charter-party, as the deed of both the partners.
When the question first arose in the courts of law, it would ¿seem to have been contended, that each of the parties to a deed *271 must actually seal it personally, or by an attorney constituted by Mm by deed for that express purpose, to make it binding or obligatory upon him. And that the principle applies equally to personal contracts as to the transfer of interest in land. But that rule, if it ever did prevail, was soon relaxed. So early as the time of Charles I., in 1632, it was stated by the king’s attorney in Lord Lovelace’s case, [Sir Wm. Jones' Reports, 268.] as settled law at that day, that if divers men enter into an obligation, and they all consent and set but one seal to it, it is a good obligation of them all; and on that ground in the principal ease, the roll being sealed with but one seal, he said, “if one of the officers of “ the forest put one seal to the rolls by the assent of all the “ Verderors, Regarders, and other officers, it is as good as if every “ one had put his several seal.” This principle, that one may weal for another by his consent, appears by that case to have been familiar at that day. It may be traced to times of high antiquity. And in modem times it was judicially settled in the case of Ball v. Dunsterville and another, 4 Term, Rep. 313. that a bill of sale purporting to be the deed of two co-partners, but sealed with the seal of one of them for and on behalf of himself and the other, and by the authority of the other, is the deed of both. In that case it appeared, that the defendants were partners in the transactions, and that one of them executed the deed in the presence of the other, and by Ms authority for them both; but there was but one seal, and it did not appear that he had put the seal twice upon the wax. The court was clearly of opinion, that it was a good execution by both. The Reporter adds, it is true, that the court relied principally on the circumstance, that the deed was executed in the presence of the party for whom it was sealed by the other. In that particular, that case differs from this; for Bunker was absent at the time of the execution of this charter-party. The case, however, fully establishes the principle, that a partner may execute a deed for his co-partner by the authority and consent of such co-partner, and that one seal will suffice for both. It is in point also, to show that the authority and consent of the partner, for whom the deed is executed, to the partner who executes it for him, may be by parol. One of the objections taken on the pan, *272 of the defendants to the sufficiency of the execution of the bill of sale in that case, was, that the authority given by the one to the other, to execute the deed, was by parol, and that such authority ought to be conferred by deed. But the court disregarded the objection, obviously deeming it of no weight or importance. The principle of that case was recognised by the highest court of this state in the case of Ludlow and others v. Simond, 2 Caine’s Cases in Error, 1. 42. 55., where the agreement was executed on,the part of the Ludlows (as this charter-party is'by these defendants) in the partnership name, and with but one seal. An exception was taken to the execution, but the court, on the authority of Lord Lovelace’s case, and the case of Ball v. Dunsterville, held the execution good., They put it on the ground, it is true, that the evidence was sufficient to show, that both the partners were present at the time of the execution and assented to it. And it cannot be disguised, that stress was laid by both the learned . Judges, who adverted to this feature of the case, upon the presence of the party for whom the deed was sealed, at the time of the execution. But I am not able to discover any additional efficacy, which Ms actual presence could give to the execution beyond his consent and concurrence in the act. His presence simplified the proof of that consent and authority to Ms co-partner; and in that view of it, was an important ingredient in the case, But it was the consent and concurrence of the party, and not his presence, which imparted efficacy to the seal affixed by his co-partner for him as his seal; and his presence alone, unless under such circumstances as to imply an assent to the act, could be. of no avail. Assuming, then, that the deed derived its virtue and binding force from his consent and concurrence in the act of his co-partner, that consent and concurrence, if established by proof, must surely be equally efficacious, whether the party was actually present or not. The difficulty, in every instance, is in showing that the absent partnér did in fact give his consent and concurrence to the particular deed in question by his co-partner, for him, and as his deed.
This appears to me to be the sound sense of the rule; and such 1 understand to be the exposition given by the Supreme Court of *273 this state to the rule of Ball v. Dunsterville, in the case of Makay v. Bloodgood, 9 Johns. 235, which may be considered as the next case in order. In that case, the action was upon an arbitration bond, in the usual form, subscribed by one of the defendants with the name of the firm, and sealed with one seal, thus, “ J. & L. Bloodgood [L.S.]” The testimony was, that the bond was executed by L. Bloodgood, who alone signed the name of the firm, and affixed the seal; that the other partner was not actually present when the bond was so signed and sealed, but that he saw the bond before it was executed, and approved of it; and that the partner who afterwards executed, told him that he would execute the bond for both of them, to which he consented. It appeared that he was about the store at the time of the execution, but was not actually in the room when the bond was signed. Upon these facts the argument was, that, to make the deed obligatory, both the obligors must sign and seal it; and if one executes for the other, his authority to execute must be by deed. But the court held the case to come within the principle of Ball v. Dunsterville. One of the partners, it was observed, sealed the bond for himself and his co-partner, with the consent of his partner, and after the partner had seen and approved of the bond, and while he was about, the store at, the time of the execution. This evidence, say the court, was sufficient to carry the cause to the jury, and to justify them in finding it the deed of both. What was to be left to the jury to find 1—The fact, that the party who sealed had the parol authority of his co-partner to seal for him.
This, then, was the case of a deed executed by one partner for himself and his co-partner, with the consent, and concurrence of the co-partner, but not in his presence; and the evidence was held sufficient, to justify the jury in finding it the deed of the absent party. One of the witnessses, it is true, does state that the partner whose seal was affixed by his co-partner for him to the deed, was about the store at the time of the execution; and the court by throwing that circumstance into their opinion, may be supposed to attach some consequence to it. But that witness expressly states, that he does not recollect that that party was actually in the room when the bond was signed; and another witness, *274 (who was also present at the execution of the bond,) testified positively to the absence of that party, at the time the bond was signed and sealed by the executing partner ; and who is the only witness to prove that the party who did not seal the bond, saw, and approved of it, and authorized his co-partner to seal it for him. That witness was one of the arbitrators; he was confessedly a credible witness, and-his testimony to the point is clear and positive. The fact, therefore, of the absence at the time of the partner, for whom the bond was sealed by the executing partner, was fully and conclusively established. Consequently, the efficacy of that signature and seal as the act of th,e absent party by his authorized agent, could not depend in any degree upon the presence of the principal; but must result wholly from his previous consent (with full knowledge of the purport of the bond,) to the execution of it for him by his co-partner. And if the consent and concurrence of a partner to the execution of a deed by his co-partner for him gives effect to the seal affixed to the deed for him by the co-partner in his absence, as his seal, the time which may intervene "between the act and the previous consent, or the distance of the contracting party from the place of execution, cannot be material, as long as the relation between the parties and the nature of the joint employment Continue unchanged, and no express or implied revocation of the authority and consent of the absent partner is shown. If, then, the authority to execute may be by parol,the whole controversy might be considered as resolving itself into a question of evidence, upon the fact of the authority of Seton to seal for Bunker. The cases already cited certainly tend to establish the principle, at least with us, that the authority of a partner, in the course of his co-partnership transactions, to seal a deed for his co-partner, to which that co-partner has consented, is not required to be by deed ; and the subsequent cases of Skinner v. Dayton and others, and Randall v. Van Vechten, would seem to recognize and sanction the rule. But those cases have a material bearing upon the whole merits of the question before us, and are well entitled to our attention. The case of Skinner v. Dayton and others arose in the Court of Chancery, and was finally decided in the Court for the Correction of Errors, 19 Johns. 513. In that case *275 the agreement purported in the body of it to be between White, Taylor and White, of the one part, and Reuben Skinner, William Raymond, Jun., and Abner Hitchcock, as Directors of the Gran-ville Cotton Manufacturing Company, of the other part; and the persons named as parties of the second part, engaged in behalf of the Company, to pay to White, Taylor and White the sums of money mentioned in the agreement. But the agreement was signed and sealed by Skinner alone in this manner: “ For the Directors, Reuben Skinner, [L. S.]” An action at law had been brought upon this contract in the Supreme Court of this state, by White, Taylor and White against Skinner alone, for three instalments of the moneys stipulated by it to be paid to them; to which action he_,;,had pleaded non est factum, and a special plea in bar that the deed was executed by him in his capacity of director and agentfor the company, and not otherwise, or in any other capacity whatever; to which special plea the plaintiffs demurred, Theacourt gave judgment for the plaintiffs on the demurrer, upon the ground that the defendant was bound to aver and prove that he had authority to seal for his co-directors. It appears that leave was given to the defendant in the action at law to amend his plea, by setting forth his authority to contract with the plaintiff. He, however, did not avail himself of that permission ; but elected to seek relief in equity. The bill was against all the parties in interest, and enjoined the suit. The objects of it were to have the damages upon the covenant liquidated upon principles of equity, and to compel the co-partners to contribute to the satisfaction of what might be assessed for damages therein. The pleadings and proofs disclosed the circumstances under which the contract was made, and the subsequent acts of the company,which were reliedon as asatisfaction and ratification of it. by them. TheChancellor [5 John Chan. Rep. 351.] was of opinion, that there was not the requisite evidence that the other co-directors ever authorized the making of the contract, and that the subsequent acts and assent of certain of the directors were no ratification by the company at large of the contract; and he on those grounds declared, that there was no well-founded pretence on the part of the complainant of a right to *276 (all on the company at large, or on any individual of it to contribute to the damages which White, Taylor and White might recover against him ; and iie refused to grant the relief sought by the bill. But the Court for the Correction of Errors reversed the decree, on the ground that the agreement was authorized, or had been ratified by the directors, and by all the members of the company, exceptNathan Doanewho, it was said, had forfeited his shares and as to whom the bill was dismissed with costs; and it was held that all the members of the association except Doane were chargeable as partners with the liabilities growing out of the contract, and bound to contribute to the payment of the damages recoverable for the non-performance of it, and that the injunction against the judgment at law should be continued until such contribution should be settled and made; and a decree based upon those principles was sent to the Court of Chancery to be executed.
This case was cited by the defendants’ counsel, as distinguishing between the liability of the principal, and the remedy against him in such cases, by reason of his own acts or admissions, and his liability and the remedy against him, upon the contract of the agent; and as establishing upon that distinction the rule, that the covenant of the agent, for benefits to the principal within the scope of the agency, may create a liability of the principal in respect of the benefit, which equity may enforce; but that the agent’s seal cannot change the principal with the covenant so as to give an action at law against him. Senator Hopkins does appear to incline to those views of the case; and he holds the equity of the complainant to be against the joint funds of the company, and that there was no remedy against the individual members as co-partners; but none of the judges concur with him on that point; and he, while he holds those opinions upon the equity of the case, admits in clear and strong terms, that the subsequent ratification of the contract is a fact from which assent and participation at the time may be, and ought to be, inferred. And if that position be correct, upon our view of its bearings, it would bring the case within the principle, which *277 allows a remedy on the contract against all the parties, who assented to it at the time, whether it was sealed by them personally, or by their agents for them. The judges, whose opinions are reported, all put the reversal upon the previous authority of Skinner as agent, to make the contract for the company, or upon the subsequent ratification and adoption of it by the company: ascribing the same legal effect to the previous authority, and the subsequent adoption, in charging the members of the company as co-partners with the obligation of the contract, and in imposing on them the duty, and entitling the complainant to th<¡ right, of contribution to the damages recoverable against the complainant, for the non-performance of the engagement. They differed in opinion as to the remedy and form of pleading, by which the rights of the complainant, and the obligation of his fellow-members of the company, were to be enforced; but they all concurred in the opinion as to the liability of the company.
Judges Platt and Yates agreed with the Chancellor, that there was not the requisite evidence that the co-directors authorized the making of the contract; and they thought that the subsequent acts of the directors and company could not in that case authorize a presumption of previous assent; and on those grounds they inclined to the opinion, that neither the directors nor the company were chargeable with an action at law upon the covenant. But Chief Justice Spencer thought it clearly proved that Skinner, the appellant, made the contract with the direct approbation and consent of Raymond, one of the co-directors, and that it was subsequently made known, assented to, and ratified by the other directors, and by all the stockholders, except Doane, who had previously forfeited his shares. And he expressed a decided opinion that both at law and in equity, the subsequent assent of the principal to the act of an agent in relation to the interest and affairs of the principal, is equivalent to a positive and direct authorization to do the act; that such subsequent assent is an adoption of the act of the agent: and his conclusion was, that the co npany was bound by the contract; and he held the covenant to be the contract of the directors, and that the di *278 rectors, acting for the company, as their agent within the scope of their authority, were not personally answerable; but that the covenant they entered into was the contract of the company, on which White, Taylor, and White had a legal remedy against the individuals composing the association. The same principle was in effect established by the Supreme Court in the case of Randall v. Van Vechten and others, (19 John. 60.) to which Chief Justice Spencer refers as applicable to the case before him, and governing its decision. Randall, in that case, brought an action of covenant on an agreement made with him by the defendants, who were a committee appointed by the corporation of the city of Albany for that purpose; and by which the plaintiff engaged to survey the city, and to make maps, profiles, &c., and the defendants promised to pay the plaintiff the sums mentioned in the agreement-, for his services, and to make him reasonable advances. The defendants signed their names and affixed their seals individually to the agreement, but were known and understood by the plaintiff to contract with him for the corporation; and the acts and resolutions of the corporation were produced, showing their assent to, and ratification of, the contract. The principal question was, whether it was a personal covenant binding the defendants individually, or a contract which bound the corporation. The court held, that the defendants having acted as agents for the corporation, and not in their own right, were not personally bound, but that the engagement was to be fulfilled by the corporation; and that the sealing of the contract by their agent did not absolve the corporation from the obligation to perform; and they expressed a decided opinion that the plaintiff had a remedy by an action of assumpsit upon it against the corporation, ánd that the committee were not personally liable. In this case, the form of the remedy against the principals appears to have been the most embarrassing question. It was objected, that the assumpsit was merged in the specialty, and yet it could not be the covenant of the corporation, as the corporation seal was the only organ by which the body politic could covenant, and the seals of the .agents were, in no sense, the seal of the corporation. But the answer was, that the rule of merger did not apply; for the corpo *279 ration had not affixed their seal to the contract, and as to them it was a simple agreement in writing by their agents for them, upon which assumpsit would lie. A distinction was taken between a corporation and an individual contracting by agent, and it was said that the seal of the agent could not represent the seal of the body corporate, whose deeds must have the corporation seal; but that the seal of an agent of an individual is in law the seal of his principal; and that, therefore, the form of action against the principal, in the case of a corporation, is not determined by the form in which the agent, contracts; but that in the case of an individual, the form of action must correspond with the form of the contract, whether by seal or simple contract. This distinction shows that covenant would have been the proper form of action on the agreement of the agent, if the principal had been an individual, and not a corporation.
It is admitted, that in bankruptcy one partner may execute a deed in behalf of himself and his co-partners, which will be binding upon both. This, however, is allowed to be an exception to the general rule; but it is an exception under which the rule is dispensed with, in the case to which it applies; and if one partner binds another without liis copartner’s consent, he alone, by his single signature and seal, for and in the name of the firm, gives validity to the deed without the previous authority or subsequent adoption of the absent partner. Yet it is an exception, which has not been introduced by statutory provision, but which owes its origin to the great inconveniencies it obviates, and rests upon the sanction of usage, and its own great intrinsic merits for its support; and it is co-extensive in its application with the necessity which gave it birth. It shows, that the general rule does yield to the force and pressure of circumstances, and maybe relaxed to avoid inconveniencies, without a violation of principle. So it has been held that a warrant of attorney, executed by one partner for himself and his co-partner, in the absence of the co-partner, but with his consent, is a sufficient authority for signing judgment against both; and the assent of the absent co-partner, which ratifies and confirms the deed, may be subsequent to, and need not precede or accompany the execution; the principle is. *280 that the assent of the absent partner to the deed amounts to an adoption of the seal.
And is it too bold a proposition to hazard, that as between partners who are identified in interest, and co-equal in their powers, a seal affixed by either to the signature of the firm may, by the previous authorization or subsequent assent and adoption of the other, be in judgment of law the seal of each, so as to make the instrument the deed of all the members of the co-partnership, who thus give it their assent and concurrence 1
In the case of Halsey v. Fairbanks and Whitney, 4 Mason, 206. where the action was assumpsit by a creditor against the principal debtor, and his trustee, under an assignment for the benefit of creditors, for the recovery of the debt out of the funds assigned the trustee on the ground of the insufficiency of the assignment to protect the property of the debtor in the hands of the trustee from the claims of the creditor: one point was, that several of the creditors, who had signed and sealed the assignment being partners, had executed the instrument with a single seal in the co-partnership name of the firm, and not in the individual names of the partners; which form of signature and execution it was insisted was irregular and inoperative in law, and on that ground it was contended that the claims of those creditors must at all events be deducted from the amount to be retained by the trustee in virtue of the deed. Judge Story acceded to the principle, that one partner could not bind another by deed without his assent, but held that a signature and sealing in the name of the co-partnership w'th a single seal is good, and binds all the partners who are present, or assent to the execution. So in the case of Henry Darst and others v. Roth, 4 Wash. C. C. R. 471. the declaration was in covenant, and stated that Henry Darst and two others who were named with him in the declaration as plaintiffs in the suit, by the name and description of Henry Darst & Co., entered into an agreement with the defendant, under their respective hands and seals, whereby the plaintiffs agreed to sell to the defendant certain lands in the state of Ohio, for which the defendant agreed to pay a stipulated price. The plea of non est faclwn was interposed. At the trial the agreement was offered in evidence, and it appearing when pro *281 duced to have the signature and seal of Henry Darst & Co., and of the defendant, but not to be signed and sealed by all the members of the firm of Darst and Co., individually; the counsel for the defendant objected to it as inadmissible, contending that it was the deed of Henry Darst only, and not the deed of the other plaintiffs and of the defendant, as stated in the declaration. To this it was answered, that the execution of the deed by one of the plaintiffs by the direction of or with the assent and concurrence of the others, though evidenced by their subsequent ratification, made it the deed of each of the plaintiffs; and that the assent was to be proven by the evidence the plaintiffs yet had to offer. And Lord Lovelace’s case, and the cases of Ball v. Dunsterville, Mackay v. Bloodgood, and Skinner v. Dayton, were cited and read by the plaintiff’s counsel, as supporting their propositions. Judge Washington declared, that the cases which had been read, abundantly proved, and he decided that the execution by Henry Darst, one of the partners and owners of the land, with the consent of the other two partners and owners, made it the deed of the three; and although there was but one seal, yet that was, in point of law, the seal of each of them; and he ruled, that upon proof of the consent and concurrence of the other two in the execution by Darst, (if such proof was necessary, and the joining in the suit was not of itself sufficient for the purpose,) the agreement was good evidence to go to the jury. The concurrence of the other two in the execution by Darst, was proved, and a verdict was rendered for the plaintiffs. Now it is manifest that the learned judge was strongly inclined to the opinion, that the fact of the two co-plaintiffs joining with Darst in the suit, was of itself sufficient proof of their assent and concurrence in the deed; and the further evidence offered by the plaintiffs of such concurrence, was the subsequent ratification of the agreement by them. Darst did not pretend to be allowed by deed to seal for the other partners and owners of the land. These cases appear to me to establish principles, which apply to the case now before us. The charter-party in this case was executed by one of the defendants for himself and the other defendant, his general co-partner. It was for the charter of a vessel, to be employed for legitimate co-partner *282 ship purposes. The contract was seen by the absent partner at Angostura, where he resided, and he, with full knowledge of it, received the outward cargo of the ship which was consigned to him, and shipped the return cargo on board the chartered vessel, under the charter-party, and in conformity to its provisions, without any objection on his part to the form of the contract, as a partnership engagement. Was not the judge right, then, in charging the jury, that they would be justified by these facts, in concluding that Bunker, the absent partner, had authorized Seton to execute the deed? If the act was unauthorized, and he intended not to he bound by it, would he not have repudiated the charter, or have expressed some dissatisfaction or complaint? He must have had full knowledge of the charter-party, for it was the title of the partnership of which he was a member, to the ship for the voyage. It was the compact which was to govern him, and to regulate'his conduct in regard to the ship, and from that source alone could he acquire information as to the time he was allowed to detain her, and the port to which she was to be sent. He cannot be allowed to take shelter under the plea of ignorance, for he was chargeable with full knowledge of the existence and contents of the instrument. Under these circumstances, was not his silence a tacit acknowledgement of the authority of his partner to enter into the charter-party, and his acts in receiving, sup, ying, and employing the chartered vessel, and shipping the return cargo under the charter-party, a recognition of the contract, and a full ratification and adoption of it by him ? This subsequent recognition amounts to a ratification of the contract; and .t was a fact from which the jury might well infer a previous authority in Seton to contract by seal for the co-partnership. [19 John. 571.]
The power of Seton to bind his co-partner by contracts without seal, for purposes within the scope of the co-partnership employment, is not contested ; and it is impliedly admitted, that the employment of this vessel for the voyage and adventure upon which she was sent by Seton, was authorized by the terms of the co-partnership. It is equally clear that Seton was the acting partner at New-Yorlt at the time, and the agent there for Bunker, his absent co-partner. Indeed, that fact could not be denied, for the *283 acts of both partners conclude them upon the point. It follows then, that, upon the principles already settled by the Supreme Court and the Court for the Correction of Errors in the cases I have cited, the co-partnership was bound by the obligation of the contract of Seton as partner and agent of the firm; and both partners having each in his appropriate sphere concurred in reaping the fruits of the charter-party, and enjoying the benefit resulting from the use of the vessel, must both be bound to pay the consideration agreed to be given for the use of her. The only question, that can be made, is upon the form of the remedy upon the contract—whether this action of covenant against both is tnaintainable, or covenant against Seton alone, or a bill in equity against the co-partnership, was the proper form of the suit ? The only objection to the action in its present form, is the technical effect of the seal. For if the partnership-name had been subscribed by Seton without a seal, there could have been no objection to the validity of the contract, or to an action of assumpsit against both the co-partners upon it. But, if an authority to contract for a partner by seal in his absence, may be conferred by him upon his co-partner by parol, and if the fact of such authority being given may be inferred from other facts, there can be no solid objection to an action of covenant on this contract against both partners; for the jury have found that Seton had authority to seal the deed for Bunker, and the seal affixed by Seton by that authority to the co-partnership-name, must consequently be in law the seal both of himself and of his partner. I have endeavoured to show that, whatever may have been the ancient law, it is now the settled rule that an authority to execute a deed for co-partnership purposes, may be conferred by one partner upon another by parol; and the cases to which I have referred appear to me to confirm the position. In the case of White and others v. Skinner, 13 John. R. 307., the plea was held to be bad, for the want of the averment of an authority to Skinner, from his fellow-directors or the company, to contract for them by seal; and in the subsequent case of Randall v. Van Vechten and others, the court held, that the evidence of the agent’s authority supplied the defect in the plea in the prior case, and was sufficient to charge the *284 principals with the contract and to exonerate the agent from personal liability. Yet the authority was not shown or required to be by deed. So in the case of Skinner v. Dayton and others in equity, where the whole case was disclosed and the principals held answerable for the contract of the agent as made by their authority, no vestige of an authority by deed is found. The ratification and adoption by the company was by resolutions, letters, and acts; and the previous consent of one of the co-directors was by parol. Yet stress is laid on these acts and on this parol consent by the court; and it is distinctly admitted that the right to contribution would have been imperfect without that proof. Chief Justice Spencer expresses a decided opinion that the evidence was sufficient to exonerate the agent, and to support an action on the covenant against the individuals, who composed the association ; and if the other Judges, whose opinions are reported, incline to the opinion that the members of the company could not be sued at law in an action of covenant on the contract, it is because there was not, in their judgment, the requisite evidence to show an authorization of the agent to bind his associates by a seal; and that such an authority would not in that case be inferred from their subsequent adoption of the contract. There was another reason, which might have weighed with those, who held that an action at law against the company was not a competent remedy in that case. White, Taylor and White, themselves, with whom the contract was made by the agent, were associates and fellow members of the company, and in a suit on the contract against all the members they would be proper parties defendants. Besides, the contract was for joint account, and they were bound to contribute to the damages they themselves would recover in the action at law. The incongruity and intrinsic difficulties of a suit at law, in which the same person would be both plaintiff and co-defendant, probably conduced to the preference of a suit in equity, which would be free from that embarrassment. However that may be, my judgment upon the merits, aside from the question of form, I confess, leans to the views taken of the case by the Chief Justice. It seems to me, that where the obligation of the contract is held to bind the principal as made by his authority or adopted by him, the remedy against him upon it must *285 be the same as if it had been executed by him, I discover no solid distinction between the previous authorization of the act or contract of the agent, and the subsequent ratification and adoption of it by the principal. If the agreement is in the name of the principal, and the law charges him with it as his contract, an action of covenant must lie upon it against him ; for the adoption makes the seal affixed to it by the agent, the seal of the principal. And this I understand to be the doctrine of the case of Randall v. Van Vechten and others. There, the previous authority to the agents to contract by seal, if there was any such authority, did not appear; but a subsequent ratification and adoption of it was fully proved. It is assumed by the court, that the appointment of the defendants by the corporation as their agents, for the purpose of contracting with Randall for the survey, was conceded at the trial; but it was the agency only that was admitted, and not the authorization by deed to contract by seal. Whether the appointment of the committee was under the corporate seal or by resolution does not appear; and in the absence of such authority, the consent or approbation of the common council was shown. It must tqive been the ratification and adoption of the the contract by the common council that bound the corporation to a performance of it; and we have the authority of Chief Justice Spencer, who presided in the court at the time, and concurred in the decision, for saying, that' the court put the decision principally upon the recognition, adoption and ratification by the corporation, of the contract of the agents. The court in that case held, that the corporation were liable at law, upon the contract made by the agents, (though subscribed by them and sealed with their own seals,) by reason of the adoption of it by their principals, and that the agents were not personally answerable. It was not competent to the corporation to adopt the seal of the agents or to bind themselves by deed, otherwise than by the corporation seal; and, therefore, they were held to adopt the contract without the seal, and to be chargeable in assumpsit. But if the party to be charged had been a natural person, his adoption of the agent’s contract would have made the agent’s seal his own; and the action would have been in covenant on the deed; and so the *286 court declared. This case was free from the embarrassments, which surrounded the other ; for Randall was a stranger to the corporation, and not a partner with those whom he was to sue. The whole benefit of the recoveiy against them would belong to him; and he would not be liable to contribute to satisfy his own verdict.
In these cases of Randall v. Van Vechten and Skinner v. Dayton, to which I have so often referred, the sufficiency oí the agent’s authority to bind the principal by deed, was involved in the questions which came before the court. In both cóses, the contract of the agent was under seal, and it did not appear in either case, nor was it pretended, that the agent was authorized by deed to seal for the principals. If a special authority by deed was indispensably necessary to empower him to seal for them, the absence of all proof of such an authorization would have been conclusive against the liability of the principals. H- w then are we to account for the absence of any exception to the agent’s authority on that ground? Must we not conclude that the objection was not taken because it was believed to-be untenable ? If so, the counsel and the learned judges must have been of opinion, that an authority by deed was not required to enable the agents to seal for their constituents. In the case of Randall v. Van Vechten, the proof was, that the common council, by several formal resolves, recognized, adopted, and ratified the contract .of the committee ; and the court held, that the evidence was sufficient to show, that the .committee, being the agents of the corporation, had lawful authority to bind their principal according to the terms of the agreement. Mr. Justice Platt, who delivered the opinion of the court, observes, tb t it was not made a point at the trial, whether the corporation had originally appointed the defendant their agent for making the contract; and he says, that the-court must presume, that if the point had not been tacitly conceded, a formal power of attorney, or at least a resolution of the board of common council for that purpose, would have been shown. He does not intimate any necessity to presume an authority by deed, but declares, that it would make no difference whether the agents for the corporation were appointed under the corporate-seal, or by a resolution in the minutes. It may, he says, be legally done either way; and yet a resolution of a corporation is not a deed, *287 any more than a letter of instructions of an individual. In Skinner v. Dayton, on appeal from the Court of Chancery, the judges divided upon the sufficiency of evidence to show an authority in Skinner to enter into the contract for the company; but the point that his authority to be valid must be by deed, (which, if tenable, must have been conclusive of the question,) was not taken by either of the learned judges, who expressed opinions against the sufficiency of the evidence to prove the authority.. The authority, if any, was from Raymond and Hitchcock, the two co-directors, who, with Skinner, the president, constituted the board of directors, and were virtually vested by the articles of association with the. power of transacting all necessary business. They denied, in their answer, that the contract was made with their approbation or consent, and the proof of their approval and concurrence was, the declaration and admission by Raymond of his implied consent given to Skinner to-make the contract, and the recognition of the contract by Hitchcock, as obligatory upon the company. It was apparent upon the face of this evidence, that the agent could not have authorized by deed to contact under seal for the principals, and the inquiry into the evidence of his authority to bind the company by the contract in question, was a virtual admission of the sufficiency of a parol authority for the purpose; for in that view alone could the inquiry be material. Mr. Justice Platt indeed expresses the opinion, that one of the associates, admitting them to be partners, could not bind his co-partner by a seal without special authority, but he does not say, nor indínate, that the authority to seal must be by deed. Mr. Justice Yates, while he states the law to be that one person cannot seal for another without express authority, admits that the authority may in some instances be by parol, and he refers to the case of Ball v. Dunsterville as an example of such an authority by parol. Chief Justice Spencer held, that a subsequent assent is an adoption of the act of the agent, and equivalent to a positive and express authorization to do the act; and he adds, that the ratification and adoption of the contract of Skinner by the respondents in that case, gave White, Taylor, and White a good ground of action upon it, against the individuals composing the *288 association. And Hopkins, senator, agreed, that the subsequent negotiation of the contract of Skinner, by the act of the president and directors in making the assignment to which he refers, amounted to a ratification, and was a fact from which assent and participation at the time might be and ought to be inferred. He was of opinion, that Skinner, having contracted as the agent, was not personally bound; but that the contract was made or ratified by the directors—the proper agents of the company—and was binding not upon the individuals as such, but upon the company in its collective capacity ; that is upon its funds. The Judges held it binding upon the individuals composing the company, which opinion prevailed; and they were, on that ground, held liable to contribution. These cases, then, certainly countenance, if they do not in terms adopt the principle, that the authority of an agent to seal for his principal may be effectual, without the formality of a power by deed. And my conclusion is, that as between partners, the principal who adopts and ratifies the deed, which his co-partner, in virtue of a parol authority to affix his seal, has executed for him, on the principles in operation with us, makes the seal used by the agent his own, and becomes liable to an action of covenant upon the contract, as his own deed; and upon that ground, if my views of the evidence of adoption are correct, this action is maintainable against Bunker conjointly with Seton, whether the authority of the latter to contract for the former by seal was expressly proved or not. The previous authority was, if necessary to satisfy the forms of law, to he inferred from the subsequent assent and adoption; and under that aspect of the case, the charge of the Judge, if incorrect, would not vitiate the verdict. The error is upon an immaterial point and could not mislead the jury; and a misdirection under such circumstances is not a sufficient ground for a new trial. But again, this charter-party was a contract for the lease or hiring of the vessel for a voyage, by the plaintiff to the defendants, for a stipulated freight and demurrage, as the consideration of the grant. The absent partner accepted the charter of the brig, understandingly and with full knowledge of the charter-party, which professed to confer the title of the vessel for the voyage upon him and his co-partner, as the charterers. This *289 charter-party, under which the defendants assumed upon themselves the temporary ownership of the vessel, and employed for their commercial operations, contained the covenant on their part for the payment of the consideration or freight and demurrage, upon which this’ suit is now brought. What then was the legal effect, of this acceptance of the title and of the actual possession, use and employment of the vessel, by both the partners under the charter, upon the operation of the covenant of the°charterers to pay the consideration 1 Can it be that one of the joint purchasers, who takes the benefit of" the purchase under a deed to both, may refuse to pay the consideration which that deed reserves, or because he has omitted personally to seal the deed, or that one partnerwho maybe solvent, shall throw upon another who may be insolvent, the obligation which has been incurred by a contract in the usual course of trade, in their co-partnership name, and for their mutual benefit, and to which both of them have by their acts acceded, merely because the co-partner, who made the contract, has used a seal in the contract by which the agreement was consummated 1 The principle that the acceptance and "enjoyment of an interest under a deed, which is sealed by one of the partners, (but which the other does not seal, but enters under it and agrees to it,) will charge both with the covenants it contains for the payment of the stipulated condition, is not novel in our law. In contracts affecting real estate, it was settled in times of high antiquity, that the acceptance of . an estate under a deed of conveyance or a leasehold interest under alease, bound the grantee or lessee, who did not seal the counterpart to the conditions annexed to the grant, and to the covenants that run with the land.
And Lord Coke in his commentary upon Littleton, 2 Co. Lit. 231. puts the case of a lease by indenture to two lessees ; one of whom seals the counterpart, and the other does not seal but enters and agrees to it j and he was held chargeable in covenant fora sum in gross (which he was bound to pay to the plaintiff in case that . certain conditions comprised in the indenture were not performed) by his acceptance of the lease; and because he was not joined in the action the writ abated,
*290 • And in the report of Brett v. Cumberland, in 2 Roll. Rep. 63., a case, (which I suppose to be the same with that to which Lord Coke refers,) is put, as cited from the Year Books, where three men were enfeoffed by deed, and in'the deed there were covenants on the part of the feoffees, and two of the feoffees only sealed the deed; yet as the third-feoffee entered and agreed to the estate conveyed by the deed, he must be joined in a writ of covenant with his companions.- • . I find no case which corresponds precisely with this citation in its circumstances: but the principle appears to have been extracted from a case in the 38th year of Edward III., fol. 8. of the Year Book of that reign, which is probably the authority also upon which Lord Coke puts the case before cited, from his commentary on Littleton. It was an action of debt upon an indenture, and the plamtiff alleged in his count, that he had, by the indenture, leased to the defendant a manor for a term of years, and in the same deed, the.tenant covenanted and became bound to the plaintiff in £20, in case certain conditions comprised in the indenture were not performed: and the action was for the £20. The indenture was found, on oyer of it, to purport to lease the manor to the defendant, and one R., who appeared on the face of the deed to be a party to it, and it was objected that R. was in life, and not named in the writ; to which it was answered, that R. had never put his seal to the deed; and therefore was not a party to the deed, and the plaintiff had no good writ against him for the payment; but the writ abated. On the argument, Thorpe propounded as a settled rule, that if land' be leased to two for a term of years, and one put his seal, .and the other agree to the lease, and enter and take the profits with him, he shall be . charged with (he payment of the rent, albeit he did not put his seal tq the deed. To the- correctness of this rule, Finch acceded ; but he drew a distinction between the payment of rent and a sum in gross, contending that his .agreement made him a party to the lease, and liable to the payment of the rent; but if there had been a condition contained in the deed, which was not parcel of the lease—as a sum in gross payable by it—if he put not his seal to the deed, although.he was a party to the lease, he is not a party to the conditions. But the judgment of the court was, that the *291 writ should abate; whereby the distinction of Finch was overruled, or the liquidated sum of <£20, as the penalty for the breach of the condition, was not deemed such a sum in gross as to bring the case within it- In any view of the case, if there be any just analogy between agreements affecting real estate, and those which relate to chattels, the principle it establishes must have an important bearing upon this; for in this case, the' charter-party was avowedly between the plaintiff and the co-partnership of Seton & Bunker; it was sealed by Seton with the co-partnership-name for the co-partnership, and it was accepted,- and the vessel employed by Bunker under the contract. And if that acceptance and enjoyment does not bind Bunker, as one of the charterers and party to the deed, to the payment of the freight and demurrage, which were the consideration Of the charter and parcel of the charter-party,' it must be because a different rule applies to a lease or grant of a chattel interest from that, which is applicable to a lease of land. I know of no principle, which calls for such a distinction, and no precedent has been shown to establish it.
The rule established by the case cited from CokeonLittleton, and the principle of which is found in the year books, has, I believe, never been overruled or shaken. Its foundation is laid on the agreement which the acceptance of the lessee imports, and which his fruition of the benefits of the estate obliges him, by the immutable principles of justice, to observe and perform. And, at this day, I apprehend, that one of two lessees who does not seal the lease, but enters and enjoys the estate, would be liable at law with the lessee, who seals upon covenants running with the land in the indenture to which he is a party, and which he agreed to and accepts, and der which he so enters and has the possession. Can it be necessary to look further for a principle of law to sustain the present action % Can any resemblance be more perfect than the analogy between the lease of a freehold for a term, and the charter or letting to hire by deed of charter-party of a vessel for a voyage ? The only difference betweén the two - contracts, is, that the subject of the one is real estate, and the subject of th'e other is a chattel interest. And will it be contended, that the technical rules of the common law, which require the actual sealing of the deed by *292 the party, tamake him answerable in an action of covenant upon it, is more unbending in its application to personal contracts than m deeds of lands'? . If a party, who is named in a leáse as one of the lessees, but who never seals the lease, is nevertheless bound by his acceptance of the estate to the performance of a covenant for the payment of a sum in gross to the lessor, for the use of the land, and liable to an action of covenant on the deed in case of default of payment, must not one of two charterers, who never seals, the charter-party, but takes the ship, and performs the voyage with her under the contract, be equally bound (and upon the same principle,) for the payment of the freight and demur-rage stipulated by the deed to.be paid by the charterer for the us,e of the ship, and be equally liable to an action of covenant upon it in casé, of default 1 The principle is, that the enjoyment of the grant by the grantee who does not seal it, and his acceptance of the estate or interest he acquires by it, make him equally a party to the deed with the grantee who does seal it, and oblige him also to the performance of the conditions and the observance of the covenants, which constitute its consideration, or form a part of the terms upon which the interest was granted.
.• These principles apply with peculiar force to thé case of partners, where the partner who seals the deed has a joint,interest with the party for whom he seals ; and the legal consequences of a different rule,, furnish an.additional reason for holding them both liable: for the contract, if not the deed, of both the co-partners being in law the deed of him who sealed it; the joint assumpsit, which the law would have raised upon the joint benefit of it to the co-partnership, would be merged in the specialtyof the one co-partner, and no remedy be left against the other co-partner for the payment or consideration reserved or made payable by the contract, except- perhaps in equity upon the acceptance. In mercantile operations, such a rule would be peculiarly inconvenient and manifestly unjust.. If the Co-partnership take a store upon 'lease to transact their business, and both are named as lessees, but one of them only seals the counterpart, and the other agrees to it, and they occupy and enjoy the store conjqintly, under the ' lease it is seen that covenant will lie against both for the rent. *293 And this, upon the privity of contract, and the force of the seal of the one to bind the other. Would it not be strange, then, when a ship is taken by two co-partners upon charter for a voyage, and both are named as charterers, but one only seals the deed, and the other agrees to it, and concurs in the use and employment of the vessel under it, the remedy upon it for freight and demur-rage, which compose the consideration of the charter, and are of the essence of the contract, and a condition of the grant of the -vessel for the voyage, should be against that partner, alone, who sealed the charter-party 1 And if in any case the seal of one covenantee can be construed to enure as the seal of his fellow-covenantee, so as to create a privity of contract with the other contracting party, and give a remedy against both upon the covenant, the charter of a ship for a voyage at a stipulated freight, by one of the co-partners in trade, with the consent and concurrence of the other, must come within the rule.
This analogy between the charter-party and the lease, to be complete, requires that the. absent partner should agree to the charter-party; adopt it, and freely co-operate, and concur with his co-partners in the operations under it, as the contract of the co-partnership : he must have the option upon full knowledge, or with the means of knowing the nature and-purport of the deed, to accept or reject it. And with this security to him against the abuse of his seal, what danger does he run % His own acceptance and adoption being requisite to make the seal, his partner affixes, his own, if he is dissatisfied with the contract, he may refuse or decline to agree to the deed; or his protest against it, (to manifest his dissent and refusal to accept it,) may guard him against the legal effect of an implied acceptance, if compelled, for his own safety, to interfere with the operations of the chartered vessel. But if, with the notice he is required to have, he deliberately elects to accept and adopt the deed, and to partake of the full benefit of it, he cannot complain of being held to its obligation. And if the facts of this case bring it within the analogy, the principles flowing from that analogy must have their application.
Upon a general review of all the considerations that belong to the question, sufficient, I think, is shown to establish this charter» *294 party as the deed of both the partners, and to conclude Bunker from objecting to thé seal affixed by Seton to the co-partnership name, as the seal of both. The justice of the case, and'the good 6enSe °f the transaction, requires this construction.
1 have endeavoured to show that it is reconcileable with legal principles of the contract, and I have met with no adjudication, which I can consider as binding ¡upon this court, which fetters' my own judgment, or compels me, by the force of authority and precedents, to a different decision. ,
A brief review of the cases cited for the defendant, will show the grounds, which, in my view, distinguish them from this.
In the case of Clement v. Brush, 3 Johns. Cases, 180., where one partner'gave a sealed bill in the co-partnership name for a co-partnership debt,, there was no proof or pretence of any authority either by deed or by parol for Brush who gave the sealed bill, to seal for Howell, his co-partner; nor did it appear that Howell was present at the time, or even ratified or adopted the deed.
So the case of Green v. Beals, 2 Caines. 254., wás a bond and warrant of attorney, confessedly executed by one partner, for himself and his co-partner, without any authority from his co-partner to sign or seal for him, and no subsequent adoption or ratification of the act was shown or pretended.
The case of Harison v. Jackson and others, was an action of covenant on an agreement between the defendants, describing them as merchants and.partners °f the first part, W. & J. of the second part, and the plaintiff of the third part. The agreement was sealed by one of the defendants for himself and the other two defendants. It appeared to be a partnership transaction, and to have been entered into on full and valuable consideration received by the co-partnership ; but it was not executed in the presence of tire, other partners, nor any authority shown by them to seal it; and it was holden not to be binding upon the absent partners.
This decision, then, did no more than affirm the proposition so often advanced in other cases, that the general powers incident to the relation of partners, on which the case was admitted to rest, does not authorize one partner to bind .his co-partners ■ by deed. *295 There was no pretence of previous authority or subsequent ratification by the absent partners to support the agreement as their deed. The fact that it was for a co-partnership purpose, and, upon a full and valuable consideration, received by the co-partnership, could not take the case out of the general rule. It freed the contract from the imputation of fraud and collusion; but it furnished no evidence of any authority or consent of the absent partners to the agreement, which was sought to be enforced against them as their deed.
The cases of Ludlow v. Simond, Mackay v. Bloodgood, and White v. Skinner, have already been reviewed, and if my exposition of them is correct, so far from conflicting with the principles I advocate, they lend material aid to the arguments on which I found my opinions.
The nisi prius case of Williams v. Walsby, 4 Esp. 220., was cited to show that a general authority by parol, from one to execute deeds for another, is not sufficient, butthat there should be a special and specific authority to execute the particular deed. That was the case of a release of assignees of a bankrupt, which was pleaded in bar to the plaintiff’s action, and by which the defendants alleged that one of the assignees, with the consent of the others, had released. The proof was, that one of the assignees executed the release in the presence, and with the assent of another, and that the third had given to those two a general authority to act for him, as he resided in the country, and could not attend to the concerns.of the estate. Lord Ellenborough said, that there should have been a special authority from the third assignee to execute the deed: and that the general authority to act for him, did not warrant what had been done.
The fair exposition of this case is, that the general authority of one of the several assignees in bankruptcy to the others, to act for him, is not sufficient to enable them to execute a release by deed, and so Whitmarsh (141) expounds it.
Such an authority does not necessarily import a power to execute deeds, and probably would not in any case be held to embrace such an authority. In its natural and most obvious sense, it would be construed to commit to the co-assignees the active and *296 ordinary .duties of the trust, and to confer the power of performing all such acts as are incident to it, without consulting him. In this Sense of the terms, a general authority to act, would riot wafrant the execution of the release; but a special authority would be necessary for such a special purpose. But, would a special power to seal that particular deed be necessary % and must that power necessarily be by deed 1 Lord Ellenborough does not question the sufficiency of such an authority. He does not deny the Competency of a spécial authority by parol to execute deeds. The point of his decision, is, that a general authority from the absent assignee to .his co-assignees, to act for him, did not confer a power to execute a release by deed, and he leaves all other questions untouched.
The case of Steiglitz and another v. Egginston and others, at Nisi Prius, 1 Holt, 141., was an action on an award with common courts, for goods sold and delivered, &c.; and it appearing on the trial that the submission was by agreement under seal, and was ■executed by one. of the defendants for self and partner,—C. J. Gibbs, (though'no objection was raised by the defendant for defect of execution by them, but the defence was placed on other grounds,) called on the plaintiffs to support the execution of the" defendants for “ self and partner and, upon their proposing to prove that one of the partners gave authority to the other to execute the deed for him, and that the. partner who did not execute, had subsequently acknowledged the agreement, and contending that this was a substantial execution, the Chief Justice ruled that the authority, to execute, must be by deed: that one man could not authorize another to execute a deed for him, but by deed, and that no subsequent acknowledgment would do; that if one partner, who does not execute, acknowledge that he gave an authority, the court must presume that it was a legal authority ; and that mast be under seal, and must be produced. The report states, that the plaintiffs afterwards proceeded on the common counts, and recovered a verdict; so that the point ruled against the plaintiffs, for the defendants^ could not be brought up for review. If the learned Chief Justice is to be understood as holding that one man cannot authorize another to execute a deed for him, *297 hut by deed, nor adopt a deed executed for him by his consent, and make it his own ;—and that this, rule is of universal appiication;—has no qualifications, and admits of no exception (as his language would seem to import,) he goesfurther, in my judgment, than the English cases will fairly bear him out; and, he is, I 'humbly conceive, at variance with the solemn adjudications of our own courts. If we are to abide by the decisions of our own judicatories, as I understand them, we cannot admit it to be law, that the authority of a partner to execute a deed for his co-partner, must, in all cases, of necessity, be by deed; or that the subsequent acknowledgment, ratification and adoption of a deed, to which the co-partnership name and seal are affixed by his co-partner for him, will be insufficient to make the seal his own ; unless the authority of the partner to seal for him be by deed, and be produced, which is the doctrine of Chief Justice Gibbs. It is clear, that his opinion did not turn upon any technical objection to the form of action, but upon the validity of the submission. The plaintiff sued upon the award; and if the submission was binding upon the partner, who did not formally execute it, but gave authority to the other to execute, and after the execution acknowledged it, the award was binding, and no technical difficulty obstructed the action upon it. Nor is the objection put upon that ground. The opinion is, that the submission was unauthorized and void; and on that ground alone could the plaintiff proceed on the common counts, and recover upon the original causes of action, which were submitted: and which, if the submission was valid and binding, were merged in the award. And that decision cannot be received as law in this court: because the broad propositioh it advanees comes too closely in conflict with the principles recognised by the cases cited from the reports of our own country. Without referring to others, I am unable to reconcile it with the cases of
Randall v. Van Vechten and others, and Skinner v. Dayton; in both of which, the deed of an agent, or partner, executed for his principals or co-partners, without any authority by deed to contract for them under seal, was upon the verbal authority, or subsequent adoption and ratification of the principals, adjudged to be binding upon them; and the only difficulty in the minds of -the *298 Judges in either case, (in the way of a legal remedy upon the deed, against the principals,) was the technical objection to the form of action. We must adhere to the principles established by our own courts in preference to the decisions of foreign tribunals; and my own judgment follows, with entire satisfaction, the course which duty prescribes.
The objection to the form of pleading, which forms the defendant’s second count, is wholly untenable. It is a clear and v¡ ell-settled principle, that the pleader may count upon a deed according to its legal effect, and that he is not bound to state the authority by which an attorney executes for his principal. It is sufficient to declare upon a deed executed by an attorney or agent, as the deed of the principal; and as a general rule, it cannot be necessary to state or aver the authority of the agent to execute. Special cases may occur, which will form exceptions; but I see no ground to take this case out of the rule.
When the defendant is to use the deed for his defence against the plaintiff’s demand, the rule oí pleading is different; for then the authority to execute is of the essence of the defence, and must be averred in pleading, or it cannot be shown in evidence. The test of the correctness of these rules is, that a demurrer to a declaration upon a deed as the deed of the principal, generally, would not be good; and that upon a plea of non est factum, the authority of the agent would be matter of evidence, and support the count by showing it to be, as alleged, the deed of the principal; but a plea, setting forth the deed, and the execution of it, by one for the other, without showing the authority to execute, would be bad upon demurrer.
On both grounds, therefore, the motion of the defendant for a new trial, must be refused.
But the plaintiff also excepts to the opinion of the Judge on another point, and asks for a new trial on that ground.
Entertaining no doubt on this part of the case, I shall forbear any examination of the regularity or propriety of the application; contenting myself with the disavowal of all intention to give my sanction to the mode of presenting the question, by expressing my opinion upon the point.
*299 The objection is, that the Judge ruled that the passage money, for the additional passenger, was not recoverable in this action. I think the direction was right. The plaintiff did not charter the cabin of the vessel to the defendants, but gave them the privilege of taking out one passenger only. The cabin subject to that privilege was excepted out of the charter, and reserved to the owners. ■ The defendants had no right to use the cabin for any purpose; but the restriction did not result from any covenant, either express or implied on their part, not to use it, or not to take more than one passenger, but from an exclusion of them by the exception, from all ownership, use or possession of the cabin. The use of it, if wilful and without license, as the plaintiff charges it to have been, was an usurpation, as entirely unauthorised as if they had never chartered the vessel; and they had no greater-right to take the passenger, than a tenant would have to locate a lodger in an apartment of his tenements which his landlord had excepted and reserved out of the lease. My view of the testimony, however, is, that the charge of an unauthorized and compulsory obtrusion of the second passenger upon the brig and her owners, is not supported by the evidence; but that the passenger was taken by the consent of the master, and under an agreement with him upon his privilege, expressly secured to him by the con= tract. But if that view of the testimony is incorrect, or if passage money, which belongs to the plaintiff, has been received by the defendants, he must resort to another remedy for the wrong; it cannot be recovered in this action of covenant upon the charter-party. The technical admission resulting from the pleadings, might indeed be conclusive, if the covenant on which the action is founded, warranted the breach, But, on my construction of the deed, no such breach could be assigned, because there was no covenant embracing the case.

Motion for a new trial denied,

[Emmet & Grim, Att's for the plff, Hoffman & Palmer, Att's for the deft's.]
Note.—Mr. Justice Hoflman gave no opinion in this case, being a connection of the defendant.